Good morning. May it please the court, Mackenzie Fillo for the appellants. This court should use of discretion in finding the mark to be inherently distinctive and applying the priority of use test. The mark here is merely descriptive and the court improperly presumed otherwise. Henriquez was the party seeking a preliminary injunction. He had the burden of proof at all points, but the court explicitly shifted that burden to the fire department, saying the fire department had the burden of overcoming a presumption of inherent distinctiveness and that is just completely wrong and Henriquez doesn't even dispute it. In addition to improperly shifting the burden of proof, the court also failed to hold Henriquez to concessions he made both before the PTO and again in the district court. Henriquez at all times conceded that this mark was merely descriptive. He never argued otherwise and the court on its own came up with this argument to the contrary and that was also improper and an abuse of discretion. And a third reason that was error is because the PTO is the expert agency and the court gave no deference to that agency's determination. So for these multiple bases, the court erred in finding it inherently distinctive. Now you argue that the mark had not acquired secondary meaning by 2013, so essentially your client was entitled to use it. There were no rights in it. Your adversary says the cases that you're relying on that involve junior users who use a mark independently of a senior user are for that reason not applicable here because you in essence were using something with someone's permission even if it wasn't a trademark in 2013. Do you want to address that? Yes. There is no case law in support of that argument. Even the district court which bent over backwards to find in his favor did not accept his implied license argument. And part of that is because an implied license is actually an affirmative defense. It would be our defense to say that he let us use it, not his sword to obtain a preliminary injunction. And even putting that aside, an implied license requires control. And he admitted that he had no control. When he was asked at page 707 of the record, were you the decision maker here? He said, it was not me for sure. He said, who was the decision maker? The question was who was the decision maker? And he said, not me, that's for sure. And that's at page 707. So he conceded he had no control over these events. He did some work for sure. And he ran one skill table at the conference, which was a large event. So he probably had control over that one little part of the conference. But he did not have control over the overall event as he conceded. There was no implied license. There is no case even remotely suggesting that someone could get a preliminary injunction on his evidence here, which is basically, he testified, it was kind of understood that this was mine. That's it. That's all he has. That a mid-level manager at FDNY knew that he had held these prior events and therefore that it was his trademark and that FDNY was somehow using this pursuant to some sort of implied agreement. And when asked what were the terms of this implied agreement, his only, the only term he could come up with was that Dr. Isaacs had agreed that the money from the event would go back into, would go towards EMT related purposes. He did not say there was any term related to his control over the event. And therefore he had no implied license. If we were to agree with you either on the arguments you've just made or on the over-breath argument with regard to the preliminary injunction, what would happen procedurally? Would Mr. Enriquez have a chance to develop his case further on the merits, on the likely, on the inherently distinctive aspect or other people's understanding of the use of the mark and so on, on remand? Well, we think this, that he's actually prevented from even making that argument based on his conduct before PTO, where he submitted his application under 2F. He asserted that the reason he was entitled to any And that there's two circuit courts saying that, the Federal Circuit, which is the expert in this subject matter, and I believe the Eighth Circuit. So if this court went the other way, it would be creating a split based on real, no law really. So we think he's bound that it's descriptive only, and therefore there's really nothing to be addressed on remand. But if this court wanted to And as to over-breath, I would just like to address that briefly. The Fire Department has had a Special Operations Command for decades. Mr. Enriquez works there. It has long preceded his involvement in any of these events. There are special operations divisions in police and fire departments across the country, as his own witnesses testified. His friend Joe Hernandez worked for the Miami Special Operations Command. The idea that he can prevent FDNY from using the phrase special operations in a conference about the work of its special operations division is frankly kind of ridiculous. And of course the word medical is generic. I mean even if these terms have some sort of special protection when put together in this way, the terms themselves are And to the extent that the injunction prevents us from using them in a descriptive way, it is over-breath. Thank you. Good morning, your honors. May it please the court. My name is Jordan Fletcher, and I represent Rescue Paramedic Juan Enriquez. Your honors, the background here is germane. Mr. Enriquez created MSOC events in 2011 outside of his FDNY employment. At the city's request, he brought his events to New York City and produced them here for seven years in cooperation with the city, serving as a host. So what, how does that bear on the descriptive nature of the mark? Uh, well let me get to that. It is a descriptive nature of the mark, right? Well that's a good, that's an open question for the court. Let's be clear, it's special operations, and that's what that's what this conference is all about. Understood, your honor. So the city argues that Judge Matsumoto made two errors, right? The first is that the judge declared the mark was suggestive rather than descriptive. Now with respect to the initial presumption based on the 2F registration, the city may be right that the presumptions start in the wrong place, but at the end... This wasn't something you even argued before. It was not, your honor, but frankly just because I didn't argue it, I think that doesn't bind Judge Matsumoto from conducting her own independent fact-specific investigation based on hundreds of pages of briefing and exhibits and two days of I wish that maybe Judge Matsumoto had said, okay there's an initial presumption of descriptiveness with secondary meaning, and yes the PTO examiner found in a preliminary finding that it was descriptive, but based on this full record that I have before me, which frankly the city doesn't dispute, and they don't dispute the factual analysis, they just say the presumptions started wrong. And I think that, yes, I wish the district court had done that. I didn't ask for it, but I Back to the trademark question, because that's really the essence here. So what's your strongest argument for why medical special operations conference is something more than descriptive? Well, your honor, I'll defer to Judge Matsumoto's decision. She devoted 10 pages to that. Could you explain it though, because these are generic words. Medical special operations and the funny position of defending Judge Matsumoto's decision here, but what she said was that a consumer who sees those marks does not immediately jump to what the product is or what the service is. Now that was her finding. I think this court could repeat that finding, but at the end of the day, I think there are four ways this court can reject the appeal, and that's just one of them. So I'm happy to turn to the others. But I'd still like to understand, have a more direct answer to my Matsumoto did or didn't say. How do you argue that this is at least suggestive or has some inherently distinctive meaning based on those four words that struck me as simply descriptive and very generic? Thank you, your honor. Yes, so I think that it is possible for a consumer who doesn't know anything about this conference and doesn't know what the services are offered to hear the word, to hear those three words together, the four words together, and think perhaps this has something to do with emergency medicine or special kinds of operations that happen within a hospital setting, when in fact what the services are provided are high-level disaster preparedness training for first responders. So I think it is, if you look at the language of this court in cross commerce, I think you can find it to be suggestive, but also I don't think you have to. So I'd love to turn to the descriptiveness argument, if I could. So with descriptiveness, the city argues two things. First, they argue that the judge erred by not finding the marks having secondary meanings of 2013. Frankly, we think that argument's wrong as a matter of law. If you look at this court's decisions in Kelly-Brown v. Winfrey and also in Papercutter, what you said in both places was that the mark has to have secondary meaning at the time the competitor entered the market or at the time the infringement started. And if you look at Judge Matsumoto's decision, she said that the parties were not competitors until 2022, and the infringement didn't start until 2022, because from 2013 to 2019, the FDNY used the dozen places, it's all over the opinion, that she says Enriquez brought the mark to the city, he produced the conference for the city, and through 2019, they did it together, and Judge Matsumoto actually said that Mr. Enriquez controlled the mark nationally, both in New York and outside of New York, because the conference was happening all over the country, and the city knew that, and key people at the city knew it. We also think separately that the 2013 argument is waived, because apparently, according to the city, this was the key question the district court needed to answer, and yet the city didn't even raise it below. The city argued that the mark should be, that the mark should be, are you okay, Your Honor? I'm okay. The city argued that the registration should be disregarded, because there was no secondary meaning as of 2019. The city also argued that Mr. Enriquez can't stop them from using it based on the registration, because they were a, quote, a prior user of the mark. Frankly, below the city, basically argued that they owned the mark, and they came up with the mark, and Judge Matsumoto found that that was flatly wrong. So, frankly, we think they're wrong on the case law, because the case law clearly says it has to be secondary, meaning when the parties become competitors, and they were not competitors, and they've also waived the argument. I think, frankly, we also win based on the license to estoppel is an offensive doctrine. You can find that in Really Good Stuff, you can find that in Church of Scientology. In this case, the license just happens to be implied. And now, what the city doesn't answer is, if there was no license between these parties from 2013 to 2019, then what exactly was the relationship? They weren't competitors, we know that. Joint ownership is what, what's the standing? Apparently, the city thinks that if the owner of a descriptive trademark that doesn't yet have secondary meaning allows someone else, allows the third party to have controlled use of that trademark, but there's no written contract, then all of a sudden, it becomes a free-for-all, and the trademark owner loses their rights, and anyone can do anything they want with it. I submit that's a terrible policy to put out. You're going to basically divest a ton of people of their trademark rights. But also, it just seems wrong. I suggest, if you look at the manufacturer-distributor context, where you have a manufacturer who creates a product and then has a distributor distribute it in commerce, the default rule is that the manufacturer retains ownership of the mark, if there's no contract, unless this distributor is exclusive and rebuts the presumption. But here, the city was not exclusive. The mark was being licensed all over the country by Mr. Enriquez, and he was producing events. Not licensed, right? Implicitly licensed. I mean, look, this court, I have a whole section of it. What does the record show, what is your best case that there was ever any point from 2013 till, as you say, the competition arose, that your client was suggesting this is a trademark, this is my trademark? Well, it's clear that my client did not, there was no explicit discussion about it, as far as we can tell. There may have been some conversation with Dr. Isaacs, but I think the law is clear if you look at all of the cases within this circuit, outside this circuit on the law of implied license, you don't need a specific, you don't need written contract, you don't need magic words, you need conduct. And here, the district court specifically found all the elements of the conduct. She found prior creation, request by the FDNY to use the IP, permission granted by Mr. Enriquez, actual use by the FDNY for seven years, supervision and control by Mr. Enriquez, and knowledge of the city, of all of those things. So that sounds like a contract to me, and the argument about- If it's a descriptive mark without any secondary meaning, what's the significance of the fact that it was used by the city over the years, and Enriquez, if it's just a medical special operations conference, which is what it is. You're assuming there's some sort of vital mark here. I don't see it. I don't see a distinctiveness. Thank you, Judge Walker. Well, the district court did find that acquired distinctiveness- I'm talking about the district court. The district court's findings. I don't agree with those, I think. And so tell me independently why it has secondary meaning, and how it acquired it. How did the term special, medical special operations conference, acquire a secondary meaning, apart from the fact that the district judge said so? Thank you, Judge Walker. I'd say use in commerce for 10 years. But you could use a distinctive mark. I mean a descriptive mark in commerce in perpetuity, and that might not change its nature. Understood, Judge Walker, but I think the question here is if the mark was in the process of developing distinctiveness, and at some point it did, and I think the PTO registration creates a presumption that it has acquired distinctiveness as of the date of registration. So we're operating from that first spot. Yes, Your Honor. Suppose a company starts talking about its annual meeting, and then it continues to use that mark, and maybe somebody else comes up with the term annual meeting. At what point does it become distinctive? Everybody associates the annual meeting of a particular company. Maybe it would be annual meeting of Starbucks. And then how does that become anything more than a descriptive mark? Well, I think annual meeting might even be a generic mark. It might be. And I think we're starting here from the point that this is descriptive. And the question as to the relationship between the parties is were they both independent, even though they were working together under Mr. Enriquez's control, if this was a district, excuse me, if this was a descriptive mark that was in the process of developing secondary meeting up till 2019, who is accruing the benefit of that goodwill? Are they both accruing the benefit of that goodwill, or is the benefit of that goodwill only going to the licensing party? Now, I understand there may not be a fully registrable trademark during that period. It would have had to go to the supplemental register, and all the hoops you have to jump through. But after five years, it still would have been entitled to registration on the principal register. And here it was registered on the principal register. So as of 2019, we have at the very least a presumption of acquired distinctiveness. And I understand there's a test. We put in evidence. We've briefed distinctiveness below, and we think we prevail on that. But the question really here is just, does the city get to say, well, we were doing it because we asked Mr. Enriquez to bring it here. He brought it here. We were doing it together. He did all the work for us. And then... Were there any communication between the two of them, between the city and your client, about the fact that this was a mark that had secondary meaning, and we're working together with this mark that has secondary meaning, some recognition of secondary meaning? Your Honor, with all due respect, my client is a rescue paramedic. His job is driving around in an ambulance and rappelling off buildings to save firefighters. He's not... I wish there were a contract in 2013. I wish he had understood trademark law better in 2013 to say some magic words. But I think the law is clear. That's not what's required. It's the conduct that's required. And I don't know that Mr. Enriquez needed to really understand what a trademark was in 2013. The city was certainly capable of it. Mr. Enriquez was in direct communication with multiple city employees who are agents of the city, whose knowledge is in the city. There were hundreds of pages of training materials that had Mr. Enriquez's name all over it, as the person who was producing and creating this event for the city. And... But how does that acquire... How does that show, maybe, showing a secondary meaning? They were producing an event. They were producing a medical special operations conference every year. And, you know, at what point does it require a secondary meaning? Just because he's doing it, he's involved. He can get involved in something that has a descriptive connotation that they're using every year. Well, Your Honor, I think that's a wonderful question of fact. But the question here is, and it's a wonderful question of fact, and I think at least by 2019, it had secondary meaning. We know that based on the registration. But the real question here is, can a descriptive mark that does not have secondary meaning still be licensed to a third party? And I think there are property rights there, even if they're not fully-fledged property rights. And they can be licensed to a third party. Did you have any concerns around the fact that the registration of the mark and the acceptance of it by PTO created the secondary meaning itself? Or did they acknowledge it? Or is that just creative presumption? Or could it be dead wrong? If the PTO makes a mistake? It could be dead wrong. And the city had the opportunity to challenge it below. And they attempted to. That's what the brief is full of, is arguing that there's no secondary meaning. And the district court rejected that. And I think that rejection is not an abuse of discretion. It's not clear error. It's not outside the range of permissible decisions that the district court could have come to. But in terms of the presumption, I think the way the mechanics went was there was an application. The PTO issued a preliminary rejection based on descriptiveness, said you can submit a 2-F letter. Mr. Enriquez, who was pro se at the time, didn't really know what he was doing in the process, said, oh, I can register my mark if I say I've been using it on a substantially exclusive basis for the previous five years, which he was. And that entitled him to a registration. So we could go back and look under the hood and go through all the facts and decide if there was actually secondary meaning as of 2019, or frankly, more to the point, as of 2022, when the infringement started, which is really the important date. But the district court did that. She found that there was as an alternative finding. And I don't think that there's any indication that it was an abuse of discretion. Although, respectfully, I understand you may personally disagree, Judge Walker. Thank you. Okay. Thank you. Oh, I apologize, Your Honor. Can we talk about the scope of injunction, the scope for 10 seconds? Take 10 seconds. Okay. Even if this is a descriptive mark with secondary meaning, we have three words that have secondary meaning together as a two words that were descriptive, but had secondary meaning, and you found that created a likelihood of confusion. So I think the injunction here was narrowly tailored and absolutely proper. Thank you. Thank you. I'd like to just talk about a couple points very quickly. The fact, my colleague here said that since someone who doesn't know anything about special operations might not know what it is, that that means it could be suggestive, and that's not how it works. It's the intended audience, if they know what it means. And the people who go to these conferences, they are cops and firefighters and military people. They all know what special operations is. This is not some sort of mystery term. We did preserve our argument about the, that we had the right to continue using the mark because he had, it was descriptive only, and we started using it in 2013. That's at page A23 at the bottom and going on to A24. We did not cite the cases that we're citing now, but we made the exact point that we're making here. My colleague suggested that a ruling in our favor would somehow divest tons of trademark owners, but it wouldn't because he didn't own anything in 2013. There was nothing to own. There's still arguably nothing to own, but for sure there was nothing to own in 2013. On the implied license, an implied license is still a contract, and there are special rules for contracting with the city. You cannot, the city does not enter into contracts by accident. That would be a terrible idea. The city would go bankrupt if the, if we could accidentally enter into contracts. So that, and this court has held that those rules are non-waivable. And I think your honor sort of were asking, did he ever say anything to anybody that this was his and he had the right to, that he owned this, and that we were somehow precluded from doing anything. And he never did, and his silence speaks volumes. He is asking for a preliminary injunction, but he was an employee with a duty of loyalty who never said anything to anybody. He said it was just kind of understood by a mid-level manager. That is not enough, and this court should reverse. Thank you. Thank you both, and we'll take the matter under advisement. Nicely argued, both sides. Thank you.